Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention where the Court is now sitting. God save the United States and this Honorable Court. Good morning, counsel. This is Judge King with Judge Floyd and Judge Klee. We're pleased to have you here in this interesting case. I want to say that Judge Floyd and I are honored to sit with our colleague from Northern West Virginia, Judge Klee, during the course of these proceedings. Our first case is number 19-1609, Adams v. American Optical Corporation, et al. And, counsel, Mr. Martin? Yes, Your Honor. We're pleased to hear from you. Thank you, Your Honor. My name is Mike Martin, and I represent the family of Gary Adams in this appeal. And I thank Your Honors for the opportunity to be here today. The question presented before the court today is when the statute of limitations ran in Mr. Adams' case, a man who suffers from co-worker's pneumoconiosis. The plaintiffs submit, Your Honors, that the trial court erred in failing to consider evidence that Mr. Adams' early symptoms were attributed to non-occupational causes and non-occupational diagnoses. The standard of review in this case requires the court to review the case but prohibits the court from weighing the evidence or reaching factual inferences contrary to the non-movement's competent evidence. Mr. Martin, this is Judge Fuller. Do you dispute that Mr. Adams had suffered an occupational injury from the inhalation of coal dust prior to September 29, 2016? Yes, we dispute that, Your Honor, because we had… Based on what evidence? If you look at the evidence, first of all, of Dr. Alam and his conclusion beginning in 2007, which can be found on Court Transcript 955-57 and 957 and 1162… Those excerpts illustrate that in 2007, Mr. Adams was actually diagnosed with something called granulomatous disease or histoplasmosis. That is a non-occupational disease. In fact, his CT scan from 2007 was negative for any kind of occupational lung disease. So if we're looking at 2007, we know at that point in time, Mr. Adams is being told by his pulmonary doctor that he does not have co-worker's pneumoconiosis. And that's exactly what Dr. Alam told him as reflected in the record. In 2009, after Mr. Adams received another letter from NIOSH, there's a screening program in place where co-workers are screened through a program under NIOSH requiring co-workers to be screened for x-rays. And he received another x-ray in 2009 suggesting that he might have co-worker's pneumoconiosis. He goes back to the doctor, and in 2009, he goes back again to a pulmonologist, Dr. Alam, who tells him again that he does not have co-worker's pneumoconiosis. He says he's perfectly fine, and that's on appeal record 960-961. And what was the date of that? That's 2009. That would have been August 24, 2009. There's a CT scan study, which the CT scan study on August 24, 2009, which can be found at the record at page 1164, actually says he's negative for co-worker's pneumoconiosis. Again, because he suffers from a granulomatous illness, which may look like pneumoconiosis by chest x-ray, but is not an occupational illness. And that's a key point here that's identified in the Mind Safety Health Administration regulations. And that is that these x-rays that are taken through these screening programs, and this is in reference to the provision in the CFR, 42 CFR 37.2. In these screening programs that are conducted, chest x-rays, under the standard, are not what we call pathognomonic. I was going to have a problem with that word. Dust exposure. Because on scarring, and looking at chest x-rays, scarring can mimic many diseases. Co-worker's pneumoconiosis looks like histoplasmosis. It looks like granulomatous disease. It can look like a variety of fungal illnesses. And so an x-ray standing alone does not establish a diagnosis. And this is undisputed by the experts. Both the defendant and the plaintiff's expert agree to this. And the statute directs that. So the fact that Mr. Adams got letters from NIOSH saying you've got co-worker's pneumoconiosis doesn't mean he's got it. What the statute requires or what the regulations require is that it has to be clinically correlated. So he does the right thing. He goes to the doctor. And so the court's conclusion on page 1685 of its opinion that Mr. Adams had co-worker's pneumoconiosis in 2007 or 2009… …that's exactly what the court says on that page… …is actually contradicted squarely by the evidence, where the doctors were in fact telling him he didn't have it. And he had it, by the way. October 2, 2014, which is when he was diagnosed with rapidly progressive pneumoconiosis. On that day, what was discovered for the first time was massive conglomeration on Mr. Adams' lungs. Yes. And this massive conglomeration had not been seen before. What had been seen before were things that mimicked other illnesses. And in fact, because it mimicked other illnesses, Mr. Adams had been told he didn't have pneumoconiosis. Had he filed a lawsuit at the time, he would have been granted summary judgment against him because he couldn't meet his burden of proof. The other conclusion that the court… October 7, 2014 brings you within the two years. Is that what you're saying? Correct. That's correct. But if you have a problem with this, Virginia law doesn't have a discovery rule. Well, I agree with that, Your Honor. What Virginia law keys off of is when the injury occurs. And so we look to Locke v. John Manso, which is kind of a key case that controls here. It's a 1981 Supreme Court case from the state of Virginia. And what Locke says is that in order to determine the time that the plaintiff was hurt… And I'm reading from page 905 of the opinion. It must be established from competent evidence produced by a plaintiff or defendant that pinpoints the precise state of injury with a reasonable degree of medical certainty. Prior to October 2014, there is no statement by any doctor to a reasonable degree of medical certainty that Mr. Adams has pneumoconiosis. Mr. Martin, let me ask you that question about the use of the word pinpoint. Does your argument depend on this court holding that the pinpoint of the date of injury cannot happen retrospectively under Virginia law? Yes, because, Your Honor, if you look at it retrospectively, the problem with doing that is that… The information that is used when doing a retrospective analysis is based on information that has not yet occurred. How would that rule differ from the sort of discovery rule Virginia has rejected? It is differing in this way. What has to exist in order to establish injury is some conclusion based on reasonable medical certainty that the illness exists. And so while you can do a retrospective analysis of any illness, including pneumoconiosis, and say, well, now that I've got all these facts, now that I see the conglomeration and these new events occurring in later years, I now know that what probably happened is that he got pneumoconiosis back in 2007 or maybe even as early as 2000. You can do that exercise, but that exercise is based on events that occur later. For example, based upon the presence of massive conglomeration, which then results in the confirmation of the injury and the actual diagnosis based on reasonable certainty. What you have before that date, Your Honor, is nothing based on reasonable certainty but a constellation of symptoms which suggest illness, no doubt, but not necessarily occupational illness. For example, the court concluded on page 1685 of its opinion that Mr. Adams' moderate restrictive defect, his shortness of breath, which occurred in August of 2013, was caused by exposure to coal dust. That opinion did not exist in 2013. That opinion occurs much later, 2016 to 2019, once he's diagnosed with pneumoconiosis. In 2013, Mr. Adams had a diagnosis at that time of essential hypertension. That was a firm diagnosis, and essential hypertension also causes shortness of breath. He also had the running diagnosis of histoplasmosis and or granulomas disease, which can also cause shortness of breath. It was also suspected that he had pneumonia at the time, which can also cause shortness of breath. These were all non-occupational causes that were diagnosed based on reasonable medical certainty. And the court erred by failing to consider those non-occupational causes and applied what the court just suggested, a retrospective analysis, which can't be done. And the reason a retrospective analysis can't be done is because plaintiffs, of course, don't have the crystal ball and aren't able to make that looking backward analysis until they get the actual diagnosis. At the time, these parts of this information, these diagnostic aspects, were a product of other diseases. Finally, in looking at the chest x-rays, which as I said earlier, are not diagnostic, and in fact, as a matter of federal regulation, are not pathognomonic of dust exposure, we see in 2007 a negative CT scan for co-worker pneumoconiosis, establishing that there was granulomatous disease. We see in 2009 a negative CT scan. That's the actual word used in the CT scan report. We see in 2011 another non-diagnostic report that states that the x-ray is consistent with granuloma. We see in 2012, and this is an x-ray discussed by the lower court, an x-ray by Dr. Buck, and Dr. Buck uses the word micronodular interstitial process consistent with co-worker's pneumoconiosis, but again, not clinically correlated, and at that time, micronodular interstitial process can be granulomatous disease just as easy as it can be silicosis or it can be any other type of disease. It is not diagnostic without clinical correlation, and we know that by this point in time, Mr. Adams had gone to the doctor on multiple occasions and received a clinically correlated diagnosis of a non-occupational lung disease called granulomatous disease, and he could not be expected to have filed a lawsuit during these years. Later, in 2015, we see a March 19th chest x-ray that reads patchy mid-lung opacities consistent with pneumonia, granulomatous or non-granulomatous infection. Again, even in 2015, the chest x-ray was suggesting non-occupational causes. The court should have considered all of these pieces of evidence in realizing that there is a genuine issue of material fact with regard to when the injury occurred and when Mr. Adams would have been diagnosed with that injury. Hold on a second. If you're right on that, if you're correct on that, then how would that fact be resolved? That fact is resolved when the plaintiff presents evidence or the defendant based on reasonable medical certainty that a diagnosis of pneumoconiosis exists. That is when the injury occurs. You're saying that the question of the applicability of the two-year statute of limitations should be submitted to a jury? Yes, because it's a mixed question of law and fact under Virginia's law, and that's Gordon v. Heritage Fellowship, Virginia Supreme Court 2017, which on page 271 holds that a statute of limitations presents a mixed question of law and fact. Here, the evidence that we presented establishes no diagnosis of coworkers' pneumoconiosis of any type until 2014 in October. Prior to that time, while there may have been… I think your bell rang. Yes, I think my bell rang, Your Honor. You can finish your sentence there if you like. Well, while there may have been many symptoms suggestive of lung injury, they were all diagnosed as non-occupational-related diseases. Therefore, an injury had not occurred because no diagnosis had been made. Very good. Thank you. And you've saved a bit of time for rebuttals, I understand. Yes, Your Honor. Thank you. Now, we're going to call on the other side. Is that Mr. Spurlock or Mrs. Brown? Your Honor, it's Trent Spurlock for Mine Safety Appliances Company. And, Your Honor, Carol Browning for American Optical. And we have agreed to split the time with Mr. Spurlock having 12 minutes and with me having 8 minutes. Very good. Good to have you all here. Look forward to hearing from you. Go ahead, Mr. Spurlock. Thank you, Your Honor. Again, Trent Spurlock for Mine Safety Appliances Company. I want to make clear to the Court the only thing that's material to the Court's decision here is did Mr. Adams, based on reasonable medical probability, begin to develop occupational lung disease before September 29, 2014? And I want to briefly point out three important facts. Mr. Adams admits he was diagnosed with an advanced form of occupational lung disease, colorectal pneumoconiosis, on October 2, 2014. It is undisputed that CWP, or colorectal pneumoconiosis, takes at least five years to develop. And Mr. Adams' counsel acknowledged before the trial court, as he must, that the onset of that advanced form of disease began before September 29, 2014. And I think the Court's inquiry could stop right there. In the cases cited by all the parties, the Joyce case, for example, the Large v. Bucyrus Erie case, those simple facts were enough to establish that the cause of action had accrued more than two years before suit was filed. But in this case, if the Court wants to go further, we have offered the trial court and this Court a complete medical record, which did not exist in many of the other cases. We've given the Court 20 to 25 different documents, covering three to 16 years before suit was ever filed, that show the onset and progression of coworkers' pneumoconiosis and occupational lung disease. If the Court had not done so, I would suggest that it merely read the depositions of Dr. Alam and Dr. Locke, which can be found in the record at 934-1333 and 836-933. And I think that will resolve any of the disputes about the records and the Court will see how many times the doctors over and over and over, from 2000 through 2014, link the findings to occupational lung disease. I'm sorry, Mr. Spurlock, this is Judge Clegg's. One quick question on that. Does Virginia law permit that retrospective review of the symptoms at the time? It does, and I'm glad you asked that, Your Honor. It absolutely does. If we look at the case law that both parties agree to, the Locke case says that the time of injury will be established from available competent evidence produced by a plaintiff or defendant, assuming, therefore, that once the lawsuit begins, there will be determination through expert proof that looks back at the records to determine when there was an onset of disease. I would also point out that the Locke court says, and many other cases that we've cited, stand for the proposition that when the onset of disease may be established before any symptoms, before any impairment, and even under those circumstances, expert medical testimony will demonstrate that the injury occurred weeks, months, or even years before the onset of symptoms. That necessarily assumes that there is a retrospective review of the record to determine when disease onset. I would suggest that in the Joyce case and the large case, which the parties have cited, that is exactly what was done. In the Joyce case, for example, you had an x-ray in 1970 that showed pleural thickening. The court acknowledged that not until 1981 was pleural thickening linked specifically to asbestos-related diseases. The lawsuit was filed in 1983, but the court found, based upon a retrospective review looking back at the medical evidence, that as of 1970, the cause of action approved and the statute of limitations began to run. The other thing that the records in this case show is that this is not an inequitable result. I know that's ultimately not part of the court's decision, but we think it's important to note that between 2000 and 2009, Mr. Adams was receiving multiple letters from NIOSH telling him he had co-workers pneumoconiosis and to get to a lower-dose profession. He was being told by his doctors in 2007 and 2009 to get out of the mines, but he chose to keep working. By 2009, Mr. Adams specifically testified he knew he had black lung disease and he had become a Part 90 minor. As of 2012, Mr. Adams was signing and completing medical histories for doctors, noting himself and signing it that he had black lung disease, and in 2014, before, outside the two-year limitations period, he filed a federal black lung claim against his employer because he had black lung disease. So the fairness of the statutes and the lack of the discovery rule in Virginia, like I said, are not ultimately relevant to this court's decision, but we feel that the lengthy medical history in this case and Mr. Adams' awareness of his alleged injury for so long make this an easy case to affirm. And we already talked about the standard for reviewing the medical records and the appropriate standard. We believe that there's no question. This is Judge King. He said, well, it's like a catch-22. He didn't use that term. But if he'd filed earlier, you'd have thrown him out because he didn't have any medical records. He filed after his October of 1974 diagnosis with Dr. Rasmussen, and he gets thrown out because of the Virginia no discovery rule. So he's in a box. So under your theory of the thing, he could never make the claim. You say it takes five years, but that never would come within the two years. Your Honor, and thank you for that question. He never had to claim 5-5-5 Virginia coal miner or a West Virginia coal miner or a Kentucky coal miner. The coal miners are treated differently than the asbestos claimants. They made a special rule for the asbestos claimants down in Virginia that Judge Jones talked about. That's right, Your Honor, and they specifically have not done so and chose not to do so for coworkers' pneumoconiosis or any similar disease. When they changed the approval statute in 1985, I believe it was for asbestos. And then most recently, this year, they made another change to the asbestos statute relating to asbestos, making it a two-injury state, making Virginia a two-injury state. And on both those occasions, the General Assembly of Virginia had the opportunity to make a change to the law for a broader spectrum of diseases, but specifically did not. So we are back to what is applicable to this case is the accrual for personal injury causes of action, which is two years from the date of injury. And going back to Your Honor's initial question of what I believe it to be, I would say that Virginia law specifically states that the difficulty in ascertaining the existence of a cause of action is irrelevant. And when the injury or damage is unknown or difficult or even incapable of discovery does not matter under Virginia law. But again, I would submit to the court, and I'd like an opportunity to briefly review the records, some of which Mr. Martin went through, that I believe there were multiple opportunities to have filed a lawsuit just as he filed a claim for black lung. I think that's an important thing to remember. Mr. Adams in 2009 was taking advantage of becoming a Part 90 minor. In 2012, he was telling doctors, he was signing forms that said, I have black lung disease. That's part of my medical history. And in 2014, outside the statute of limitations, he's making a claim for federal black lung disease. There's certainly no reason he couldn't have done the same thing and filed a lawsuit outside or within the statute of limitations period. But he did not. Mr. Spurlock, I guess your argument is that it's just common sense that that disease did not develop on September 28 and was discovered on October 2. I guess that's the argument you're making, that you would not have gotten this disease in a matter of a few days. Yes, we're absolutely making that argument, as well as several others. I think the court can absolutely rely upon that idea. And as the trial court noted, that is supported by the record. The admission of Mr. Martin at the trial court level that, yes, the disease, of course, started long before September 29, 2014, was based upon the medical evidence. You can't have an advanced form of CWP that develops in the course of three days. And, of course, the court also cited the undisputed evidence provided by Dr. Allam that co-worker's pneumoconiosis typically takes 10 to 15 years to develop. But at the very least, even in an accelerated form of the disease, it takes at least five. And that is undisputed. Under that evidence, a pneumoconiosis, co-worker's pneumoconiosis case could never be the subject of a lawsuit like this. Could never be. In Virginia. Under Virginia law. No, you could, I think it certainly could be. You could, Mr. Adams, for example, could have filed a lawsuit when he was, got, received three different sets of letters from NIOSH. And at any of those times between 2000 and 2009. And I would submit that the court. But then, as your adversary there says, it had been thrown out somewhere early because he didn't have any medical evidence. Under Virginia law, you've got to have medical evidence. If the court. Sure, and I think that evidence. That's what I'm, that's the reason I use the term Catch-22. At least that's, I remember that back from when I was in school. Absolutely, Your Honor. They called it Catch-22. You're screwed over whichever way you look. Absolutely, Your Honor. And I think I'm about to run out of my time. May I have a moment to answer the question and conclude? Go right ahead. Okay. Your Honor, again, I would say that, well, first and foremost, that Virginia law does not provide for the discovery. There is no discovery rule. And it does not matter if it's difficult or incapable of discovering outside of the limitations period. But I would ask the court to review the records, to review the testimony. Between 2000 and 2009, you have letters and x-rays over and over and over that Dr. Alam says this is evidence within a reasonable degree of medical probability of simple co-workers' pneumoconiosis, stage one co-workers' pneumoconiosis. But then if the court wants to completely discount 2000 to 2009, and because of the CT scans, and focus only on the time period between 2009 and 2014, that's fine, too. In fact, we know that co-workers' pneumoconiosis starts about at least five years earlier and takes at least five years to develop. So 2009 is a fine starting point should the court choose to focus on that time period, because what we have in that time period is a progression of disease, a progression of impairments. We have x-rays in 2012 by Dr. Buck which show interstitial nodularity, which Dr. Alam says is a specific finding linked to co-workers' pneumoconiosis. And there's no disputing that fact. Dr. Alam does not say that that was a finding that could be linked to granulomatous disease. But we've offered the court multiple records about which doctors... I think the bell went off and your colleague here has some time, unless you want to take some of her time. No, no, no, I don't, Your Honor. I will stop and I would just say that there's a lot of records to choose from, and we believe that any one of those the court can reach the conclusion and affirm the trial court's decision. Thank you very much. Thank you. Ms. Browning? Yes, thank you, Your Honor. Your Honor, I want to start by pointing the court to the statute that's at issue here, one of the two. It's Virginia Code 801-230, and it says a cause of action accrues on the date the injury is sustained and not when the resulting damage is discovered. And Mr. Adams really argues clearly for a discovery rule, and the courts have told us again and again and again that Virginia law does not recognize a discovery rule. I took it that he was arguing that he needs a jury trial to decide whether this two-year statute of limitations is applicable. Is that wrong? Well, no, he did say that to the court, Your Honor, and I think it's because he is saying… Well, can you get a jury trial to decide this issue under Virginia law? No, Your Honor. You say you can't, but I think that under the precedent of the Virginia Supreme Court, you can submit the statute of limitations to the jury. In the right case… The factual aspect of it. You can't… Indeed, there was a case, a unanimous decision by the Virginia Supreme Court in August of 2019, which was after, two or three months after this decision was rendered by Judge Jones, where they specifically affirmed that principle of law. Your Honor, I agree that if there are substantial issues of material fact regarding the statute of limitations, that it would be appropriate to submit it to the jury. In this case, there are no substantial issues of material fact regarding the fact that this injury clearly occurred outside of the limitations period. And that's what… So, the factual question is where you and Mr. Martin differ. He says there are disputed issues of material fact on that. Well, Your Honor, I would… Sherlock says there are none, yes. Yes, I mean, and I think it depends upon the way you look at it. If you look at it in the retrospective analysis, that it's clearly permissible and appropriate under Virginia law. And looking at this, I mean, that's the way that the statute of limitations is decided. And there are a number of cases that discuss that point, including a Fourth Circuit case, the Smith v. Bannon case. And in that case, it dealt with a pedicle screw that was implanted in the plaintiff's spine. And a few years after it was implanted, the pedicle screw broke. And the plaintiff filed suit. And the Fourth Circuit said you're too late, that the court said that it's too late, that the cause of action accrued when the screw was implanted. Even though the plaintiff had no injury at that time and had no reason to suspect that anything was wrong. That is the law in Virginia. And in this case, Dr. Alon's testimony, looking at this in retrospect, which he's permitted to do, he was asked, do you believe as of 2007 or 2009, Mr. Adams had some degree of CWP scarring in his lungs? He responded, yes, it's possible and probable. He said that COPD, emphysema, and bronchitis linked to occupational lung disease were present in 2007, 2008, and 2009. He was asked, do you believe at this time he, Mr. Adams, had some degree of CWP scarring in his lungs as of the last time you saw him in 2009? And Dr. Alon's answer is, that is likely possible and probable. And that is the testimony from Mr. Adams' own experts. So there is no evidence in this case that, judging back in 2007, 2009, or later on at any point, that Mr. Adams, the evidence is that he had co-workers' pneumoconiosis looking at it in retrospect. Ms. Browning, this is Judge Klee. Following up on Judge King's question, I think now we all recognize that in Virginia, a question of fact with respect to the application of the statute of limitations could be a jury question. You seem to advocate that this case doesn't require that link. Where do we draw the line? How do we draw the line between when a question has to go to a jury and when, as in this case, a district court can make a determination of fact and law? If there are questions of material fact. And here, the trial court properly reviewed the facts, considered the undisputed facts, and where the facts were disputed, looked at them in the light most favorable to Mr. Adams, which is the appropriate standard for the district court to follow. And you base that on the testimony of Dr. Alon and Dr. Lockheed? Yes, and on the court's opinion, where the court goes through and explains how he performed his analysis. So, I mean, clearly, questions of summary judgment are appropriate decisions by the court. Otherwise, you wouldn't have summary judgment. So, in this case, in some cases, there may be questions of material fact to go to the jury. In this case, there simply are none. Ms. Browner, does that conclude your argument? I was just looking quickly through my notes, Your Honor, to see if there was anything else. Go right ahead. And, Your Honor, I'll just say that this statute has been in place, or the idea that there is not a discovery rule and that you look to the date of injury in Virginia has been in place for decades and decades. And as this court has said and other courts have said, that if that needs to be changed, it is up to the General Assembly to do that. The Virginia General Assembly clearly knows how to change the law, and it is elected not to do so. So, it's the law in Virginia, and it's the law that, since it's substantive law, that needs to be followed. Thank you, Your Honors. Thank you, Ms. Browning. I appreciate it very much. Mr. Moore, Mr. Martin, I'm sorry. Mr. Martin. Thank you, Your Honors. Ms. Browning just said a moment ago that Dr. Alam's testimony was that in 2007 it was possible and probable that he had pneumoconiosis from a 2018 deposition. But, when Mr. Adams was sitting in Dr. Alam's office in 2007, Dr. Alam told him that he only suffered from granulomatous disease, which is a fairly innocuous lung scarring that doesn't cause much damage. Two years later, sitting in the same office, he tells Mr. Adams he's perfectly healthy, still has this granulomatous problem. That evidence... From the medical records? Yes, from Dr. Alam's direct examination that I took. The problem is... Yeah, the problem is if you look at Dr. Alam's testimony, the direct examination is in real time, at the time the diagnostic information was obtained and given to the plaintiff. The cross-examination is a retrospective examination based upon everything that Dr. Alam knows up until the point in time he was deposed. That's a very important point. No deference was given to the conclusions rendered to Mr. Adams at the time he was treated. And because no... The trial court erred because it failed to give any weight to that evidence. And when you look at that evidence properly, Mr. Adams was not diagnosed in 2007. He was not told that, and he could not have been expected  And at the very least, that debate is a matter of factual dispute between the parties. Mr. Barton? Yes, Your Honor. This is Judge Clee. I understand the argument you're making on that front. How do you reconcile Mr. Adams being designated as a Part 90 minor with Dr. Alam's, if you will, lagging diagnosis of him suffering from occupational pneumoconiosis? Well, Part 90 designation is a question of exposure. When MSHA recommends that you get into lighter exposure because you have the scarring on the lungs. But under the federal regulations, we also know that that scarring is not diagnostic of pneumoconiosis. And so you have to look at it... The patient is making a choice when he goes Part 90 to reduce his dust levels. That's a good thing anyway. And he testifies, and it's in the record, that he made the Part 90 decision not because he thought he had pneumoconiosis, but because he thought that was just the best choice for his family under the circumstances and the job that he was being offered. And again, that would be a factual dispute. It's disputed by Mr. Adams himself, just as it's disputed by Mr. Adams that he ever told the doctor that he had pneumoconiosis. He testifies he never told the doctor he had pneumoconiosis. Again, that would be a factual dispute. But if I look at... carry the argument of the defendants to its logical conclusion, one would have to file a case for pneumoconiosis five years before he was diagnosed, even if he didn't know he had it, because a retrospective analysis lets us, with more medical information, actually pinpoint someplace back in the past, as we can with all diseases, that all of us old guys get, including myself. We can always pinpoint further back when we actually thought it started, when we have more medical information and as time passes. But if that was the law, then there would be no standard in Virginia. And there is a standard, and the standard is stated by Locke. And Locke specifically says that the statute of limitations is to be established, quoting again from page 905, quote, from available competent evidence produced by a plaintiff or defendant that pinpoints the precise date of injury, and here's the kicker, with a reasonable degree of medical certainty. So the evidence that has to be offered is where, before October 2014, is a statement by any physician to a degree of reasonable medical certainty that Mr. Adams has pneumoconiosis. It's not there. There's symptoms that are all attributed to other non-occupational causes. And the defendant's reliance on Joyce is misplaced as well, because Joyce involved pinpointing a particular characteristic of asbestosis, which is unique to that illness, pleural plaques. Everyone knows the pleural plaques, according to the medicine. It's caused by asbestos, and that is something uniformly that triggers the statute. There's no such pinpointing evidence, shortness of breath caused by heart disease, shortness of breath caused by pneumonia, lung scarring caused by granulomatous and histoplasmosis. These are the discussions that are flowing in and out of the record up until 2014, when the massive conglomeration is discovered. Those that ebb and flow in the medical records leaves Mr. Adams not knowing what's wrong with him. And the suggestion that under the regulatory framework, in order to even get a diagnosis of co-worker's pneumoconiosis, you must file a black lung claim, because under the federal regulatory scheme, a black lung claim will not be accepted by a private doctor. So you file a claim to figure out whether you got it. He filed a claim and learned he had it as a result of that black lung process on October 2nd of 2014. That is when the statute began to run. To suggest that it is any time earlier requires a crystal ball, which the plaintiff, Mr. Adams, didn't have. We believe that, at the very least, there's a genuine issue of material fact here, and we would respectfully request the court reverse the trial court and remand for trial. Thank you, Mr. Martin. We appreciate it very much, the arguments of counsel. And that concludes this case. Madam Clerk? Yes, sir.
judges: Robert B. King, Henry F. Floyd, Thomas S. Kleeh